Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| MUNICIPIO AUTÓNOMO DE GUAYNABO<br>Recurrido<br><br>v.<br><br>LOS HERMANOS LLC<br>Recurrente<br><br>DIVISIÓN DE REVISIONES ADMINISTRATIVAS OFICINA DE GERENCIA DE PERMISOS<br>Agencia recurrida | KLRA202400302 | *Revisión Judicial* procedente OGPe 2024-543453-SDR-300344<br><br>Caso Núm. 2023-513529-PU-311770<br><br>Sobre: Impugnación de Permiso Único |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece Los Hermanos LLC (Los Hermanos o parte recurrente), mediante *Recurso de Revisión Judicial,* solicitando que revoquemos la *Resolución de Revisión Administrativa* emitida y notificada el 13 de mayo de 2024 por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio (DRA OGPe o agencia recurrida). En dicha *Resolución* la DRA OGPe declaró *Ha Lugar* la solicitud de revisión administrativa número 2024-543453-SDR-300344 presentada por la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo (OPU o parte recurrida). Al así decidir la DRA OGPe dejó sin efecto un Permiso Único con número 2023-513529-PU-311770, que había sido expedido el 31 de enero de 2024 por el Profesional Autorizado, Ing. Jesús B. Rodríguez Quiñones (PA) a favor de la parte recurrente.

Tras evaluar las controversias alzadas, adelantamos que hemos determinado *confirmar* la *Resolución* recurrida.

## I. Resumen del tracto procesal

El 15 de junio de 2018, mediante la Resolución 2017-00991-VUC, la OPU emitió un permiso de uso para el desarrollo de un restaurante con venta de bebidas alcohólicas en un predio localizado en la Carretera PR-169, km 1.0, Bo. Camarones, Guaynabo Puerto Rico, 00971, con vigencia de dos (2) años.[1] A su vez, el referido predio ubica dentro de un *Distrito Residencial de Baja Densidad* (R-B) conforme al *Mapa de calificación de Suelo del Municipio de Guaynabo.*

Luego, el 2 de enero de 2019, Milagros González Ramírez, dueña del referido inmueble, suscribió un *Contrato de Arrendamiento Comercial y Opción de Compra,* con Los Hermanos, quien, según el referido negocio jurídico, es una corporación doméstica organizada bajo las leyes del Estado Libre Asociado, representada por Joseamid Rodríguez Franqui. También surge del mismo contrato que el inmueble arrendado sería dedicado al negocio de restaurante con bebidas alcohólicas y alquiler de 5 *food trucks.*

Posteriormente, el 12 de junio de 2019, la OPU emitió a favor de la parte recurrente, el permiso de uso comercial 2019-266071-PUS-063169 para la operación de un restaurante con ventas de bebidas alcohólicas al detal, bajo el nombre "Restaurante La Loma del Vecino", en el predio descrito.

Más adelante el recurrente instó ante la OPU una solicitud para obtener un *Permiso Único* respecto al mismo predio. Tal solicitud fue motivada por el requerimiento dimanante del Art. 28 de la Ley Núm. 19-

---

[1] Este *permiso* no fue incluido en el Apéndice del recurso de revisión judicial, pero es mencionado por todas las partes en sus respectivos tractos procesales de los escritos que presentaron ante nosotros. Además, véase sección de "Condiciones Especiales" del *Permiso de Uso Condicionado* 2020-310303-PU-029092-C, Anejo 3 del Apéndice del Recurso, págs. 13-20 y párrafo séptimo del *Contrato de Arrendamiento Comercial y Opción de Compra* del 2 de enero de 2019, Anejo 1 del Apéndice del Recurso, págs. 1-8.

2017, mediante el cual fue añadido el Art. 8.4(A) a la Ley Núm. 161-2009, 23 LPRA Sec 9018c-1, conocida como la Ley para la Reforma de Permisos de Puerto Rico, que exige, en lo pertinente, que todo negocio existente obtenga un *Permiso Único* para continuar sus operaciones.

En respuesta, el 13 de julio de 2020, la OPU expidió un *Permiso Único Condicionado,* 2020-310303-PU-029092-C, bajo apercibimiento de que, para obtener el *Permiso Único Final,* el recurrente debía cumplir con ciertas condiciones acordadas en una reunión celebrada el 28 de junio de 2020 en las oficinas de la OPU, las cuales fueron plasmadas en el propio permiso. A tenor de las referidas condiciones, la parte recurrente debía enmendar la Resolución 2017-00991-VUC para incluir y solicitar la legalización de las obras ya construidas sin el permiso correspondiente, así como incluir las demás obras propuestas para la ampliación de las facilidades del negocio y/o usos adicionales.

Pasados unos años, el 31 de enero de 2024, el *Profesional Autorizado* Ing. Jesús Benjamín Rodríguez Quiñones, (PA), expidió un nuevo *Permiso Único* 2023-513529-PU-311770 a favor de la parte recurrente, para operar un restaurante y venta de bebidas alcohólicas al detal en el mismo predio.

En desacuerdo, el 13 de febrero de 2024, la OPU presentó una *Moción de Solicitud de Revisión Administrativa* ante la DRA OGPe, impugnando este último permiso emitido por el PA. Para ello, esgrimió que, por virtud del Art. 6.001 y siguientes del Código Municipal, Ley Núm. 107-2020, según enmendada, el Municipio tenía la responsabilidad de velar por el cumplimiento de *Plan de Ordenación Territorial* y su reglamentación, en aras de promover un uso juicioso y aprovechamiento óptimo del territorio, para asegurar el bienestar de las generaciones actuales y futuras mediante un desarrollo ordenado, racional e integral. Añadió que también tenía el deber de implementar el *Convenio de Transferencia de Facultades* de la Junta de Planificación y la Oficina de Gerencia de

Permisos (OGPe) aprobado por el Gobierno de Puerto Rico a favor del Municipio el 26 de diciembre de 2012. Adujo que el referido permiso expedido por el PA, para operar un restaurante y venta de bebidas alcohólicas al detal del recurrente, con fecha de expiración 31 de enero de 2025, se había otorgado en violación de múltiples disposiciones legales y reglamentarias. En específico, imputó las siguientes violaciones en el permiso expedido por el PA: (1) falta de legitimación activa del recurrente, puesto que no existe documentación en el expediente de que Los Hermanos LLC exista como persona jurídica y esté autorizada para hacer negocios en Puerto Rico; (2) ausencia de autorización para que José A. Rodríguez Franqui compareciera en nombre de Los Hermanos LLC para tramitar el permiso; (3) incumplimiento con la Sec. 2.3.1.5 inciso (c)(6) del Reglamento Conjunto, *infra,* al no cargar al expediente cualquier permiso o trámite relacionado al caso, cuando el PA sabía o debía saber, que respecto a la propiedad se habían otorgado múltiples permisos y certificaciones, existen querellas y otros trámites pendientes; (4) violación al Art. 7.8 de la Ley 161-2009, 23 LPRA sec. 9017h, puesto que el PA presentó un memorial explicativo que debió ser preparado, firmado, y sometido por la parte peticionaria (recurrente), actuaciones que mostraron falta de transparencia al actuar como parte y adjudicador simultáneamente; (5) violación al Art. 7.3 de la Ley 161-2009, 23 LPRA sec. 9017b, y la Sec. 2.3.1.5 (d) del *Reglamento Conjunto* por no incluir en el expediente una evaluación de los parámetros aplicables tras una determinación final o certificación expedida por un PA; (6) violación al Art. 7.1 de la Ley 161-2009, 23 LPRA sec. 9017 y Sec. 2.3.1.1 (a) del Reglamento Conjunto, al expedir un permiso de forma ministerial, autorizando un permiso de uso comercial en un lote de calificación residencial de baja densidad (R-B), el cual no es permitido porque se trata de una solicitud discrecional que debió ser expedida por la OPU;

(7) incumplimiento con el deber legal que emana del Art. 7.3 de la Ley 161-2009, 23 LPRA sec. 9017b, al dejar de notificar al Municipio el permiso que otorgó el 31 de enero de 2024; (8) incumplimiento con la Regla 2.5 (f) y la Regla 1.3 (d) del Reglamento de Regulación Profesional de la OGPe, Reglamento Número 8514 del 28 de agosto de 2014, al no colocar el sello de PA, sino el de ingeniero licenciado en la página 5 del permiso único expedido.

A raíz de lo anterior, la agencia recurrida emitió una *Notificación Acogiendo Solicitud de Revisión Administrativa, Orden Señalando Vista* y *Aviso de Vista de Revisión,* para el 14 de marzo de 2024.

El 16 de marzo de 2024 Los Hermanos LLC presentó una *Moción en Atención a Vista y en Cumplimiento de Orden* a la División de Revisiones. Arguyó que el Municipio no era parte adversamente afectada por la determinación final impugnada, por lo que carecía de legitimación activa para presentar una solicitud de revisión administrativa ante la DRA OGPe.

La vista en sus méritos fue celebrada según pautada, estando las partes debidamente representadas por sus respectivos abogados, y concediéndoseles amplia oportunidad para presentar la prueba que entendieran pertinente. Como resultado, el 13 de mayo de 2024, fue emitida y notificada una *Resolución de Revisión Administrativa,* dejando sin efecto el *Permiso Único* emitido por el PA, con el número 2023-513529-PU-311770. Al así adjudicar la causa de acción promovida por la OPU, el foro recurrido concluyó que el PA Rodríguez Quiñones, *no cumplió con el proceso ni con los requisitos establecidos para la concesión del permiso único.*[2] De igual manera, en la *Resolución* adjudicó que el referido PA carecía de la facultad para emitir ministerialmente el *Permiso Único* impugnado, para un uso que no era permitido en el Distrito R-B en el que ubica la propiedad objeto de revisión.

---

[2] Apéndice del *recurso de revisión judicial*, pág. 89.

Ante ello, el 7 de junio de 2024, Los Hermanos presentó ante la agencia recurrida una *Moción sobre Notificación Defectuosa y para que se vuelva a Notificar Resolución e Informe Oficial Examinador; Solicitud de Grabación.* Según se indica en el título de la referida moción, la parte recurrente adujo no haber sido notificada de la *Resolución* aludida, quedando así en un estado de indefensión al no conocer cómo fue aquilatada la prueba. Añadió que tampoco podía determinar cuáles fueron las determinaciones de hecho y de derecho alcanzadas, toda vez que en la *Resolución* solo se reprodujeron las alegaciones del Municipio. Por tanto, solicitó que se le notificara copia del Informe del Oficial Examinador, junto a la *Resolución* final de la agencia y la grabación de la vista.

A pesar de que no surge del expediente que la DRA OGPe se hubiese expresado sobre dicha moción, el 12 de junio de 2024, la parte recurrente acudió ante nosotros mediante escrito intitulado *Revisión Judicial de Decisión Administrativa,* y señaló los siguientes errores:

**Primer Error**: Erró la DRA al declarar Ha Lugar la Solicitud de Revisión Administrativa del recurrido Municipio de Guaynabo basándose en que "el uso solicitado de restaurante con ventas de bebidas alcohólicas al detal no es permitido ministerialmente en el distrito residencial de baja densidad" a pesar de que el uso había sido aprobado por el Municipio de Guaynabo vía variación.

**Segundo Error**: Erró la DRA al otorgarle legitimación al Municipio para impugnar la determinación final de un Profesional Autorizado cuando este carece de legitimación al no ser parte adversamente afectada.

**Tercer Error**: Erró la DRA al permitir que el Municipio utilizara el recurso de Revisión Administrativa para fiscalizar por divergencia de criterio la actuación de un Profesional Autorizado.

Por su parte, el 15 de julio de 2024 la OGPe presentó *Oposición a Recurso de Revisión Judicial.* El 17 de julio de 2024, la OPU también presentó una *Moción en Oposición a Revisión Judicial.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de Derecho

### A. La Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, (Ley Núm. 38-2017 o LPAU), según enmendada, 3 LPRA sec. 9601 *et seq.*, establece el alcance de la revisión judicial sobre las determinaciones de las agencias. En primer lugar, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019). Por lo tanto, los tribunales debemos ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE,* 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell,* 131 DPR 275, 290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. PR v. JP,* 146 DPR 64, 130 (1998).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Conforme a la cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas

por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, reconoció que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo erró en la aplicación de la ley, y (3) medió una actuación irrazonable o ilegal. *Acarón, et. al v. DRNA,* 186 DPR 564, 584 (2012)*; Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

## A. Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, Reglamento Conjunto de 2023 y Convenio de Transferencia de Facultades sobre Ordenación Territorial de Guaynabo

La Ley Núm. 161 del 1 de diciembre de 2009, según enmendada, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico", (Ley Núm. 161-2009), 23 LPRA sec. 9011 *et seq.*, fue aprobada a los fines de establecer el marco legal y administrativo que rigen los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. Exposición de Motivos de la Ley Núm. 161-2009, *Íd.*; *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). A través de dicha legislación fue creada la OGPe, organismo gubernamental adscrito a la Junta de Planificación (JP), con el propósito de emitir determinaciones finales y permisos relacionados con el desarrollo y el uso de terrenos, así como de las consultas de ubicación que incidan de alguna manera en la operación de un negocio en Puerto Rico. *Exposición de Motivos* de la Ley Núm. 161-2009, *supra.*

### i. Legitimación del Municipio para presentar recurso de revisión administrativa

El Artículo 11.6 de la Ley 161-2009, 23 LPRA sec. 9021r, establece que una parte adversamente afectada por una actuación o determinación final de un Profesional Autorizado podrá presentar una solicitud de revisión administrativa ante la División de Revisiones Administrativas dentro del término jurisdiccional de veinte (20) días contados a partir de la fecha de archivo en autos, de copia de la notificación de la actuación o determinación final. Para definir la figura "parte" el inciso 56 del Artículo 1.5 de la Ley 161-2009, 23 LPRA sec. 9011, nos redirige al inciso (k) de la Sección 1.3 de la LPAU, 3 LPRA sec. 9603, el cual le delimita como sigue:

> Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, **o que haya radicado una petición para la revisión** o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. (Énfasis suplido).

Ahora bien, además de ser parte, la peticionaria debe demostrar que fue afectada adversamente por la determinación de la agencia administrativa. Sobre la frase "adversamente afectada" en *Fund. Surfrider y otros v. ARPe,* 178 DPR 563, 577 (2010)*,* en el contexto de la revisión judicial, nuestro Tribunal Supremo dispuso que:

> Esta frase no está definida en la legislación. Al interpretarla, es meritorio percatarnos que el legislador utilizó el adverbio "adversamente" para cualificar la afectación, por lo que no es suficiente que la actuación gubernamental tenga un efecto sobre el litigante, sino que ese efecto tiene que ser adverso o desfavorable a sus intereses.

### 1. Convenio de Transferencia del Municipio de Guaynabo

El 15 de diciembre de 1999 se firmó la Orden Ejecutiva Número OE-1999-63, aprobando el Plan de Ordenación Territorial del Municipio de Guaynabo, eventualmente revisado, el 2 de mayo de 2010. Posterior a la aprobación de este, la Ordenanza Número 164, Serie 2004-2005 del 27 de abril de 2005 autorizó al alcalde a suscribir el *Convenio de Transferencia de Facultades sobre Ordenación Territorial de Guaynabo,* enmendado por la Ordenanza Número 41, Serie 2012-2013, y el cual le transmitió las

facultades de la Junta de Planificación y de la OGPe, relacionadas con la ordenación territorial.

El referido Convenio articula la política del Gobierno Central de ***otorgar a los municipios la autonomía máxima posible y proveerles los poderes y facultades necesarios para asumir un rol central y fundamental en su desarrollo urbano***, social y económico. (Énfasis provisto). I. Preámbulo, pág. 2 del Convenio. Además, entre las facultades transferidas al Municipio se encuentra el aplicar y ***velar por el cumplimiento de las leyes y reglamentos*** adoptados por la Junta de Planificación y ARPe (ahora OGPe) para el desarrollo, subdivisión y uso de terrenos, para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico. (Énfasis provisto). *B. Efectos de la Transferencia de Jerarquías*, pág. 14 del Convenio.

El Convenio también le confiere expresamente la autoridad al Municipio para hacer uso de los recursos legales disponibles, con el siguiente propósito:

> La transferencia al MUNICIPIO de las competencias o facultades de la JUNTA DE PLANIFICACIÓN y de la ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS conlleva que la transferencia de todas las facultades legales que tienen dichas agencias para promover el cumplimiento e implantación de la reglamentación vigente sobre el uso del suelo. **El MUNICIPIO está autorizado a instar los recursos legales concernidos,** representado por el Alcalde o por cualquier funcionario designado por este para atender, **denunciar, procesar y resolver las querellas sobre las violaciones de uso y construcción relacionadas con las facultades o competencias transferidas.** Pág. 16 del Convenio. (Énfasis provisto).

> 2. Sobre la legitimación estatutaria para presentar una revisión administrativa y otros recursos para impugnar un permiso

El Artículo 6.016 del Código Municipal, 21 LPRA sec. 7866, establece que, previo a que el Municipio reciba la transferencia de facultades de la Junta de Planificación o de la Oficina de Gerencia de

Permisos, deberá crear una Oficina de Permisos, cuyas funciones, entre otras, serán las siguientes:

> (1) Tramitar solicitudes de autorizaciones y permisos de conformidad a las facultades transferidas al municipio mediante convenio. (2) Mantener por cinco (5) años un expediente físico o electrónico de cada solicitud de autorización y permisos, así como de las determinaciones tomadas al respecto. (3) Celebrar vistas públicas relacionadas con la otorgación de autorizaciones o permisos y efectuar todas las actividades incidentales a las mismas. **(4) Promover el inicio de acciones legales, ya sean administrativas o judiciales, para procesar las violaciones o querellas relacionadas con las facultades transferidas al municipio mediante convenio.** (Énfasis provisto).

Además, la Ley Núm. 161-2009 le reconoce a los Municipios otros recursos legales para solicitar la revocación de permisos, paralización de obras o usos no Autorizados, presentación de querellas, etc. Por ejemplo, el Artículo 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024, dispone lo siguiente:

> La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction*, *mandamus*, sentencia declaratoria, o **cualquier otra acción adecuada** para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. (Énfasis provisto).

Por su parte, el Artículo 14.6 de la Ley Núm. 161-2009, 23 LPRA sec. 9024e, establece lo siguiente sobre la presentación de querellas:

> **Cualquier** agencia, dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o **jurídica**, que tenga interés propietario, o que sea colindante, propietaria u ocupante de una propiedad vecina, a la cual su interés personal podría verse afectado, podrá presentar una querella contra una persona natural o jurídica o una entidad pública, a través del Sistema Unificado de Información alegando: **(a) el incumplimiento con las disposiciones o condiciones de los permisos expedidos**; (b) la alegada ausencia de un permiso requerido; o (c) el incumplimiento con cualquier disposición de la Ley 75 de 24 de junio de 1975 o esta Ley, las leyes

habilitadoras de las Entidades Gubernamentales Concernidas, la Ley de Municipios Autónomos, el Reglamento Conjunto de Permisos o demás reglamentos aplicables. Bajo ningún concepto, se puede utilizar una querella para realizar un ataque colateral a una determinación final o permiso que debió haber sido presentado oportunamente de conformidad con esta Ley. (Énfasis provisto).

Visto el lenguaje amplio y abarcador del Artículo que precede, a la luz del Artículo. 1.008 del Código Municipal, 21 LPRA sec. 7013, el cual le confiere personalidad jurídica a los municipios, se puede concluir que están legitimados estatutariamente para querellarse con el fin de velar por el cumplimiento con las disposiciones o condiciones de los permisos expedidos en su demarcación territorial, incluyendo su Plan de Ordenación Territorial, la Ley Núm. 161-2009, *supra*, y el Reglamento Conjunto, *infra*.

ii. Profesional Autorizado

La Ley Núm. 161-2009, *supra*, creó la figura del Profesional Autorizado, como un ente privado certificado o autorizado por la OGPe, el cual puede ser un agrimensor, agrónomo, arquitecto, geólogo, ingeniero o planificador licenciado en áreas relacionadas a la construcción, con el fin de evaluar y expedir permisos *ministeriales*. Artículo 7.1 de la Ley Núm. 161-2019, 23 LPRA sec. 9017. Entre dichos permisos se encuentran los de uso. Artículo 7.3 (A) de la Ley Núm. 161-2019, 23 LPRA sec. 9017b.

El Artículo 1.5 (48) de la Ley Núm. 161-2009, 23 LPRA sec. 9011, define el término *ministerial* como sigue:

[D]escribe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto

de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales. *Íd.*

En contraste, el inciso 26 del Artículo 1.5. de la Ley Núm. 161-2009, *Íd.*, define el término *discrecional* de la siguiente forma:

> [D]escribe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse. *Íd.*

En correspondencia, cuando el Profesional Autorizado expide un permiso de carácter *ministerial*, **no** está facultado para emplear criterios subjetivos o discrecionales, sino que se tiene que limitar a determinar, por ejemplo: si el uso es permitido en la propiedad bajo los distritos de calificación aplicables; si cumple con los requisitos de edificabilidad pertinentes; si el solicitante ha presentado los documentos requeridos y satisfecho los pagos, entre otros. En función de ello, el Artículo 7.3 (A) de la Ley Núm. 161-2019, *supra*, exige que toda determinación final o certificación expedida por un PA incluya en el expediente una evaluación de los parámetros aplicables conforme a las leyes y reglamentos vigentes que utilizó para realizar la misma. *Íd.*

Por otro lado, por virtud de la Ley Núm. 161-2009, *supra*, la Junta de Planificación, en colaboración con la OGPe, adoptó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento 9473 del 16 de junio de 2023 (Reglamento Conjunto). Este Reglamento también recoge la normativa relacionada a los deberes y facultades del PA al conceder un permiso único ministerial. En lo que respecta a la controversia ante nuestra atención, allí se expone lo siguiente:

SECCIÓN 2.3.1.2 PERMISOS Y LICENCIAS EXPEDIDOS POR EL PROFESIONAL AUTORIZADO

a. Los siguientes permisos o determinaciones podrán ser otorgadas o denegadas por un PA, siempre y cuando sean de carácter ministerial:

....

3. **Permisos Únicos, según establecido en este Reglamento**

....

SECCIÓN 2.3.1.4 PERMISOS Y LICENCIAS DE LOS PROFESIONALES AUTORIZADOS DENTRO DE LA JURISDICCIÓN DE MUNICIPIOS AUTÓNOMOS CON JERARQUÍA DE I A LA V

a. El PA podrán emitir todos los permisos, determinaciones, licencias y certificaciones señalados en la Sección 2.3.1.2, en los Municipios Autónomos con Jerarquía de la I a la III utilizando el SUI.

b. El PA notificará al Municipio Autónomo con Jerarquía de la I a la III, cada solicitud de permiso que se radique ante este, así como cada permiso que otorgue para proyectos que ubiquen en el Municipio Autónomo con Jerarquía de la I a la III, **en un término de veinticuatro (24) horas contad[a]s a partir de la otorgación del permiso.**

SECCIÓN 2.3.1.5 ÁMBITO DE ACCIÓN

a. **El PA solamente podrá evaluar, expedir o denegar aquellos permisos, licencias o certificaciones de carácter ministerial, con exclusión de todo trámite discrecional**, y realizarán la revisión y evaluación de los documentos que el solicitante le presente, de conformidad con los requisitos establecidos en la Ley 161-2009, en el Reglamento Conjunto y cualquier otra disposición legal aplicable.

....

c. La revisión que ha de realizar el PA al emitir un permiso, licencia o certificación deberá incluir lo siguiente:

> 1. Que el solicitante tenga la capacidad jurídica para solicitar el servicio, mediante los métodos que establezca el Reglamento Conjunto.

> 2. Que el asunto ante su consideración sea de los delegados a los PA mediante la Ley 161-2009, este Reglamento Conjunto y cualquier otro reglamento adoptado a su amparo.

> **3. Que el asunto ante su consideración sea ministerial, según se define este término en la Ley 161-2009, y en este Reglamento Conjunto.**

> 4. **Que se le hayan presentado todos los documentos necesarios para el tipo de trámite que se solicita**, según especificado en la Ley 161-2009, los reglamentos adoptados a su amparo y la Ley Núm. 135, antes citada.

> ....

d. Toda determinación final o certificación expedida por un PA incluirá en el expediente una evaluación de los parámetros aplicables que utilizó para realizar la misma conforme a las leyes y reglamentos vigentes, la cual no requerirá determinaciones de hechos ni conclusiones de derecho, además de, como mínimo

**deberá verificar e incluir los parámetros más importantes que gobiernan los permisos ministeriales**:

> 1. Distrito de Calificación, Distritos Especiales, Distritos o Zonas Sobrepuestos
>
> ....
>
> 4. Usos
>
> ....

b. Permiso Único

El Artículo 9.10 de la Ley Núm. 161-2009, 23 LPRA sec. 9019i, dispone una presunción *iuris tantum* de la corrección y la legalidad de los permisos expedidos, incluyendo los tramitados a través de los Profesionales Autorizados. Además, el Artículo 9.6 de la Ley Núm. 161-2009, 23 LPRA sec. 9019e, dispone que los permisos son de naturaleza *in rem*. Por lo cual, en ningún caso se requerirá la expedición de un nuevo permiso, siempre y cuando el uso autorizado, permitido o no conforme legal, continúe siendo de la misma naturaleza y no sea interrumpido por un período mayor de dos (2) años.

No obstante, como parte de la transformación del proceso de permisos, la Ley Núm. 161-2009 en su Artículo 8.4A, 23 LPRA sec. 9018c-1, adoptó el *Permiso Único,* cuyo propósito es el de consolidar e incorporar trámites en una sola solicitud, para simplificar los procedimientos y reducir el tiempo de evaluación y adjudicación de las solicitudes requeridas para iniciar o continuar la operación de un negocio. El citado Artículo exige que aun los permisos de uso vigentes pasen por el trámite de conversión a un *Permiso Único*, en los siguientes términos:

> Todo edificio existente o nuevo, con usos no residenciales, así como todo negocio nuevo o existente, obtendrá el permiso único para iniciar o continuar sus operaciones, el cual incluirá: permiso de uso; certificación de exclusión categórica; certificación para la prevención de incendios; certificación de salud ambiental; licencias sanitarias; y cualquier otro tipo de licencia o autorización aplicable requerida para la operación de la actividad o uso del negocio. El propósito del permiso único es consolidar e incorporar trámites en una sola solicitud, para simplificar los procedimientos y reducir el tiempo de evaluación y adjudicación de las solicitudes requeridas para iniciar o continuar la operación de un negocio. Disponiéndose, que la Oficina de Gerencia de Permisos será la entidad encargada

de expedir las certificaciones y licencias necesarias para la expedición de un permiso único.

Sólo podrá solicitarse un permiso único cuando se incluya como parte de la solicitud, la autorización para el uso del negocio o proyecto. Toda persona que posea un permiso de uso vigente, al solicitar una enmienda o cambio de nombre, presentará una solicitud de permiso único. El permiso único tendrá la vigencia que se establezca en el Reglamento Conjunto.

Previo a la renovación de un permiso único, se requerirá una inspección por la Oficina de Gerencia de Permisos, profesional autorizado o el Municipio Autónomo con Jerarquía de la I a V. El Reglamento Conjunto deberá especificar la magnitud y rigurosidad de dichas inspecciones, con el propósito de garantizar que la actividad está cumpliendo con los requerimientos estatutarios y reglamentarios.

Si en las inspecciones realizadas se identificaran usos o actividades que se están llevando a cabo sin estar autorizadas en el permiso único, pero las mismas son permitidas en el distrito de calificación, en términos de uso y parámetros de construcción, se permitirá enmendar el permiso único para añadir la autorización a la actividad o uso, siempre y cuando se paguen los cargos y derechos aplicables al año anterior a la renovación como penalidad por llevar a cabo una actividad no incluida en el permiso único. Sin embargo, si los usos o actividades llevados a cabo sin estar autorizadas en el permiso único no son permitidas por el distrito de calificación en el cual se encuentra la propiedad, el permiso único no podrá ser renovado, teniéndose que instar una nueva solicitud. En aquellos casos en que se desista del uso no permitido, se podrá renovar el permiso único previo al pago de las multas correspondientes y éste contendrá advertencia sobre la imposibilidad de nueva renovación en caso de continuarse el uso o establecerse otros usos no permitidos en el distrito.

....

23 LPRA sec. 9018c

c. Variación de uso

La Sección 6.1.2.1 de la Regla 6.1.2 del Reglamento Conjunto establece que el propósito de un Distrito R-B (Residencial de Baja Densidad Poblacional) es identificar las áreas para futuro crecimiento urbano y para preservar el carácter residencial de áreas desarrolladas o que puedan desarrollarse donde se permitirán distintos tipos de viviendas. En armonía, la Tabla 6.29 de la Sección 6.1.2.2 de dicho Reglamento resume los usos permitidos en este tipo de distrito, entre los que se encuentran las residencias, servicios como hospedajes especializados, centros de cuido, casas de salud, y empresas emergentes que no generen ruidos, polvo, olores objetables y las cuales operen en horarios diurnos.

Cuando se propone hacer un uso no permitido en un distrito de calificación, acontece la figura de la *variación en uso*, que está regulada por la Regla 6.3.1 del Reglamento. Específicamente, la Sección 6.3.1.1 del mismo cuerpo reglamentario define la variación en uso como *un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento Conjunto en un distrito de calificación.* Las variaciones en uso solo se conceden vía excepción para evitar perjuicios a la propiedad si se logra demostrar que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad (*taking*). *Íd.* También, la referida Sección establece que, dada la naturaleza del interés público en la planificación urbana, las variaciones no son favorecidas y la Junta Adjudicativa, la OGPe, y los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de una Transferencia nunca deben aplicar con laxitud los requisitos para aprobar las variaciones. *Íd.* Dichas entidades podrán considerar variaciones en uso cuando se demuestre que ninguno de los usos permitidos en el distrito de calificación es factible desde el punto de vista físico o económico. *Íd.*

A tenor, nuestro Tribunal Supremo ha expresado que el propósito de las variaciones es aliviar las restricciones que regulan el disfrute de determinada propiedad, cuando la aplicación de la reglamentación sea irrazonable y le ocasione perjuicios a su propietario. *Empresas Ferrer v. ARPe,* 172 DPR 254, 267 (2007). De esta manera, las variaciones evitan que una reglamentación existente se convierta en un instrumento inflexible e incapaz de adaptarse a situaciones extraordinarias. *Íd.* Empero, dado al carácter excepcional de las variaciones, no son favorecidas "y solo deben concederse en situaciones realmente extraordinarias, cuando estén claramente justificadas y procesan conforme a las leyes y los reglamentos aplicables." *Íd.* Lo anterior se debe

a que, "el uso inapropiado e indiscriminado de este mecanismo 'podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos'". *Íd.* citando a *ARPe v. JACL*, 124 DPR 858, 862 (1989).

A su vez, la Sección 6.3.1.5 del Reglamento Conjunto dispone como condición al otorgar las variaciones, que la Junta Adjudicativa, la OGPe, y los Municipios Autónomos con Jerarquía I a la III con facultad para ello concedida mediante Convenio de Transferencia, que especifiquen la naturaleza y extensión de estas, así como aquellas condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en la Sección para autorizarlas.

## III. **Aplicación del Derecho a los hechos**

Advertimos que no nos atendremos al orden de los errores alzados por el recurrente en su recurso, sino que iniciaremos dilucidando el segundo y tercero de dichos señalamientos, porque plantean asuntos de umbral. A su vez, tales asuntos son susceptibles de discusión conjunta, por lo que así obraremos.

a.

La parte recurrente aduce que incidió la DRA OGPe al otorgarle legitimación al Municipio para impugnar la determinación final de un Profesional Autorizado, a pesar de no haber demostrado ser parte adversamente afectada. También arguye que la agencia recurrida erró al permitir que el Municipio utilizara el recurso de revisión administrativa para fiscalizar por divergencia de criterio la actuación de un Profesional Autorizado. No nos persuade, veamos.

Aunque en nuestra *exposición de derecho* ya adelantamos gran parte de nuestro razonamiento respecto a la presunta falta de legitimación activa

de la OPA para instar un recurso administrativo ante la DRA OGPe, a continuación atenderemos el asunto con mayor detenimiento.

Sobre lo anterior, por una parte, en la *Resolución* recurrida se afirmó que la existencia del Convenio de Transferencia resultaba suficiente para concederle legitimación al Municipio para instar el recurso de revisión administrativa. En contraste, Los Hermanos arguyen ante nosotros, que la agencia recurrida hizo una interpretación impermisible del alcance del referido Convenio, toda vez que este le delegó al Municipio la facultad de emitir determinaciones finales y permisos, pero no la de fiscalizar los permisos que emite un Profesional Autorizado que es competencia exclusiva de la Junta de Planificación.

A lo anterior el Municipio opone que, conforme al Convenio de Transferencia, la OPU tiene la responsabilidad legal, administrativa, sustantiva y procesal de velar por el cumplimiento del Plan Territorial y la normativa relacionada al mismo, de lo que surge su legitimación para haber instado el proceso ante la DRA OGPe. Por su parte, en su escrito la OGPe asevera que la legitimación del Municipio para presentar el recurso de revisión judicial proviene del Art. 6.016 del Código Municipal, *supra,* entre cuyas funciones se encuentra la de, *[p]romover el inicio de acciones legales, ya sean administrativas o judiciales, para procesar las violaciones o querellas relacionadas con las facultades transferidas al municipio mediante convenio.*

Según detallamos en la *exposición de derecho,* el Artículo 11.6 de la Ley 161-2009, *supra,* establece que una *parte adversamente afectada* por una actuación o determinación final de un Profesional Autorizado podrá presentar una solicitud de revisión administrativa ante la División de Revisiones Administrativas. Para definir la figura *parte,* el inciso 56 del Artículo 1.5 de la Ley 161-2009, *supra,* nos refiere al inciso (k) de la Sección 1.3 de la LPAU, *supra,* que dicta lo que sigue:

> Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.

Por otra parte, el Art. 13.001 de la Ley Núm. 81-1991, *Ley de Municipios Autónomos de Puerto Rico*, autorizó a los municipios a adoptar sus respectivos Planes de Ordenación.[3] Una vez puestos en vigor, se le faculta al municipio concernido a solicitar el traspaso de algunas facultades de ordenación territorial de la Junta de Planificación y de la ARPe (ahora OGPe). *Íd.* El Municipio de Guaynabo cuenta con un Plan de Ordenación Territorial debidamente aprobado, en el que se estableció las políticas públicas sobre el desarrollo y uso del suelo. Posterior a la aprobación de este, la Ordenanza Número 164, Serie 2004-2005 del 27 de abril de 2005 de la Legislatura Municipal del mismo municipio ratificó el *Convenio de Transferencia de Competencias sobre la Ordenación Territorial* (Convenio), que fue enmendado por la Ordenanza Número 41, Serie 2012-2013, transmitiéndole las facultades de la Junta de Planificación y de la ahora OGPe relacionadas con la ordenación territorial.

Es de notar que en el referido Convenio se articula la política del Gobierno Central de otorgar a los municipios la autonomía máxima posible, reconociéndole los poderes y las facultades necesarias para asumir un rol central y fundamental en su desarrollo **urbano**, social y económico. Parte I, pág. 2 del Convenio de Transferencia de Competencias sobre la Ordenación Territorial de 27 de abril de 2005. Además, entre las facultades transferidas al Municipio se encuentra el aplicar y velar por el cumplimiento de las leyes y reglamentos adoptados por la Junta de Planificación y de la ARPe (ahora OGPe) para el desarrollo, subdivisión y

---

[3] A pesar de que esta ley fue derogada, la citamos por ser la que facultó originalmente al Municipio de Guaynabo a adoptar su Convenio de Transferencia.

uso de terrenos, para la construcción y uso de edificios, y para el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico. *Íd.*, Parte II (B) (1), pág. 14.

Para ejercer las referidas facultades, concretando los propósitos que las animan, el propio Convenio le reconoció al Municipio la autoridad para hacer uso de los recursos legales a su disposición. En específico, se plasmó en el Convenio lo siguiente:

> La transferencia al MUNICIPIO de las competencias o facultades de la JUNTA DE PLANIFICACIÓN y de la ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS conlleva que **la transferencia de todas las facultades legales que tienen dichas agencias para promover el cumplimiento e implantación de la reglamentación vigente sobre el uso del suelo**. El MUNICIPIO **está autorizado a instar los recursos legales** concernidos, representado por el Alcalde o por cualquier funcionario designado por este para atender, **denunciar**, procesar y resolver las querellas sobre las violaciones de uso y construcción relacionadas con las facultades o competencias transferidas. (Énfasis nuestro). *Íd.*, Parte II (B)(5), pág. 16.

De aquí que, contrario a lo alegado por Los Hermanos, las facultades transferidas al Municipio mediante el Convenio no se limitan a *conceder o denegar permisos*, sino que incluyen velar que toda decisión en cuanto al uso del suelo en su demarcación territorial se haga conforme a su Plan de Ordenación Territorial, la reglamentación aplicable y la política pública del Estado. Ello conlleva necesariamente, el reconocimiento a las facultades del Municipio para iniciar las acciones legales que viabilicen el cumplimiento de dicho Plan, como lo es hacer uso de los procedimientos administrativos. A su vez, esto guarda armonía con la facultad reconocida al Municipio por el Art. 6.016 del Código Municipal, *supra*, para promover acciones legales, administrativas o judiciales, con el fin de procesar las violaciones al contenido del referido Convenio.

Tampoco pasa desapercibido que el interés de velar por el cumplimiento con el Plan de Ordenación Territorial es de tal magnitud que, por ejemplo, la Ley 161-2009, *supra*, le confiere la facultad al

Municipio para presentar distintos recursos ante el Tribunal de Primera Instancia, tales como *injunction, mandamus*, sentencia declaratoria o cualquier otra acción adecuada, para solicitar:

> 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. 23 LPRA Sec. 9024.

Además, el Art. 14.6 de la Ley 161-2009, *supra*, rige la legitimación para presentar una querella a través del Sistema Unificado de Información por razón de que: (a) se incumplió con las disposiciones o condiciones de los permisos expedidos; (b) no se tiene un permiso requerido; o (c) se incumplió con leyes y reglamentos aplicables. Entonces, de una interpretación de este podemos concluir que el Municipio, como persona jurídica con capacidad para demandar y ser demandado, denunciar, querellarse y defenderse en cualquier tribunal de justicia u **organismo administrativo**,[4] también tiene facultad para presentar un recurso de revisión administrativa para cumplir con su obligación de velar por la ordenación territorial. Concluir lo contrario significaría avalar que el Municipio esté atado de manos cuando adviene en conocimiento de incumplimientos con su Plan de Ordenación Territorial, o que puede acudir al foro primario a instar una acción legal sin tener la opción de acudir directamente al foro administrativo con pericia sobre el permiso de uso.

Lo hasta aquí resaltado dispone del segundo y tercer error alzado en el recurso ante nuestra consideración, en tanto sirve para establecer, sin dificultad, la legitimación que nuestro ordenamiento legal ha reconocido

---

[4] Art. 1.008 de la Ley Núm. 107-2020, 21 LPRA sec. 7013.

al Municipio para acudir a la DRA OGPe en búsqueda de un remedio, según lo hizo.

Lo anterior no se debe interpretar como que el Municipio tiene la autoridad de fiscalizar al Profesional Autorizado, pues ello recae sobre la Junta de Planificación. Véase Artículo 14.4 de la Ley Núm. 161-2009, 23 LPRA sec. 9024c. Sin embargo, ello no obsta en contra de que el Municipio, por las facultades legales ya discutidas, esté en posición de elevar sus señalamientos ante la DRA OGPe, máxime cuando del propio Convenio surge el deber del Municipio, la JP y ARPe (ahora OGPe) de prestar la cooperación y asistencia necesaria para el eficaz cumplimiento de sus respectivas funciones. Parte V (A)(4), pág. 26 del Convenio de Transferencia de Competencias sobre la Ordenación Territorial de 27 de abril de 2005. En este sentido, no se trata de que el Municipio pueda fiscalizar las actuaciones del PA por divergencia de criterio. Más bien precisamos que la actuación del Municipio fue un ejercicio legítimo de: la facultad que le asiste para impugnar ante la DRA OGPe un permiso expedido en violación de las leyes y reglamentos sobre planificación y usos dentro de su demarcación territorial; su deber de prestar la debida cooperación y asistencia necesaria para el eficaz cumplimiento de sus funciones, las de la JP y las de ARPe (ahora OGPe).

b.

Entonces, prestando nuestra atención al primer señalamiento de error, Los Hermanos señala que la agencia recurrida incidió al declarar *Ha Lugar* la solicitud de Revisión Administrativa del Municipio, por razón de que el uso solicitado de restaurante con venta de bebidas alcohólicas al detal no es permitido ministerialmente en el distrito residencial de baja densidad, mientras que dicho uso fue previamente autorizado.

En su *Oposición al Recurso de Revisión Judicial,* la OGPe sostiene que ni la legislación ni la reglamentación aplicable facultan al PA a

entender en trámites de índole discrecional, como lo sería una solicitud de permiso para una actividad cuyo uso no está permitido dentro del distrito donde ubica el predio objeto del permiso, sino que está limitado a expedir determinaciones finales de índole *ministerial*. Acorde con ello, arguyó que la DRA OGPe estaba impedida de concluir que en este caso se trataba de un permiso ministerial, solo porque Los Hermanos manifestó que existía un permiso de uso anterior expedido mediante variación **sin presentar evidencia que acreditara su existencia**. En la alternativa, sostuvo que, aun cuando existiese el referido permiso, ello de por sí no facultaba al PA a expedir un permiso nuevo, puesto que en este caso particular se incluyeron nuevas edificaciones que no contaban con permiso de uso único alguno.

Similarmente, la OPU sostuvo que, a pesar de que el permiso de uso es de naturaleza *in rem*, la Ley 161-2009, *supra*, establece que no se requerirá expedir permisos nuevos *siempre que el uso continúe siendo el mismo*. Así pues, esgrimió que la propiedad objeto del permiso se encuentra ubicada en un distrito residencial y que, por virtud del Reglamento Conjunto, *supra*, ese carácter se debe preservar. Continuó explicando que, a modo de excepción, en dicho distrito se pueden autorizar empresas pequeñas que no generen ruidos, olores objetables, entre otros. A tenor, arguyó que la variación en uso originalmente solicitada por Los Hermanos se asemejaba a una empresa pequeña, mientras que la que pretende legalizar incluye un restaurante y edificaciones -tarima, área VIP, terraza que duplica el área original y baños adicionales- levantadas sin permisos, licencias, consultas y certificaciones ambientales. Por lo tanto, al realizar usos no autorizados y construir ilegalmente múltiples estructuras, intensificó los usos autorizados en la variación original. Es por esta razón, añadida a otros incumplimientos procesales y sustantivos

de la Ley 161-2009, *supra*, y del Reglamento Conjunto, *supra*, que concluye que la presunción de corrección del permiso de uso fue rebatida.

Evaluados los argumentos de todas las partes a la luz del derecho aplicable, juzgamos que este primer error tampoco fue cometido, veamos.

El 31 de enero de 2024, el PA Ing. Jesús Benjamín Rodríguez Quiñones, expidió un Permiso Único 2023-513529-PU-311770 a favor de la recurrente para operar un restaurante y venta de bebidas alcohólicas al detal en un predio ubicado en la Carretera PR-169, km 1.0, Bo. Camarones, Guaynabo, Puerto Rico, 00971. El distrito en que este ubica es uno de calificación Residencial de Baja Densidad (R-B).

El Reglamento Conjunto en su Sección 6.1.2.1, *supra*, dispone que el distrito R-B se establece con el propósito de identificar aquellas áreas con potencial de crecimiento urbano y de preservar su carácter residencial. La Sección 6.1.2.2, *supra*, establece los usos permitidos, entre los que se encuentran residencias, hospedajes, centros de cuidos para la niñez y envejecientes, y *startups* limitados al 25% de la propiedad, que no generen ruidos, polvo, olores objetables, y que operen en horarios diurnos.

Cuando el uso que se le pretende dar a una propiedad está prohibido por las restricciones impuestas a un distrito de calificación por el Reglamento Conjunto, *supra*, este provee para que el proponente solicite una variación en uso. Debido a que pueden socavar la política pública de desarrollo ordenado que predomina en la legislación sobre planificación, las variaciones en uso no son favorecidas por el Reglamento Conjunto, *supra*. Por lo tanto, para que la variación en uso sea concedida, se tiene que demostrar que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación constituiría un *taking*.

La Sección 6.3.1.1 del Reglamento Conjunto, *supra*, establece los criterios que la Junta Adjudicativa, la OGPe o el Municipio Autónomo con Jerarquía de la I a la III debe tomar en consideración para conceder una

variación en uso. Entre ellos, que el peticionario demuestre que ninguno de los usos permitidos en el distrito es viable en la propiedad desde el punto de vista económico o físico, que su propiedad está particularmente afectada por la reglamentación que resulta innecesariamente gravosa y que el uso propuesto es compatible con los propósitos del distrito en que ubica. Por su parte, la Sección 6.3.1.5 del Reglamento Conjunto, *supra*, dispone como condición al otorgar las variaciones, que las referidas entidades especifiquen la naturaleza y extensión de las mismas, así como aquellas condiciones que **a su juicio** son necesarias para asegurar el cumplimiento de los criterios antes esbozados. Por consiguiente, de un examen de ambas Secciones en conjunto resulta que tan solo la Junta Adjudicativa, la OGPE, y los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado la facultad por medio del Convenio de Transferencia, como sucede en el caso del Municipio de Guaynabo, pueden emplear **juicios subjetivos y discrecionales** al decidir si autorizan las variaciones en uso.

En contraste, el Artículo 7.1 de la Ley Núm. 161-2009, *supra*, creó la figura del Profesional Autorizado con el fin de evaluar y expedir únicamente permisos **ministeriales**. Esto implica que cuando el PA expide un permiso de carácter *ministerial* no está facultado para emplear un juicio subjetivo o discrecional para llegar a su determinación. Más bien, este debe emplear estándares fijos o medidas objetivas a los hechos presentados. Así pues, por ejemplo, al evaluar un permiso de uso, el PA se tiene que limitar a determinar, si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si el solicitante ha presentado los documentos requeridos y satisfecho los pagos, entre otros. Consecuentemente, un PA carece de facultad para emitir un nuevo permiso único con variación en uso porque ello conlleva emplear un juicio

subjetivo. Esta norma también está contenida en la Sección 2.3.1.5 del Reglamento Conjunto, *supra*, la cual dispone lo que sigue:

> El PA **solamente** podrá evaluar, expedir o denegar aquellos permisos, licencias o certificaciones **de carácter ministerial, con exclusión de todo trámite discrecional**, y realizarán la revisión y evaluación de los documentos que el solicitante le presente, de conformidad con los requisitos establecidos en la Ley 161-2009, en el Reglamento Conjunto y cualquier otra disposición legal aplicable.

De las determinaciones de hechos de la *Resolución* se desprende que el 31 de enero de 2024 el PA Ing. Rodríguez Quiñones presentó y aprobó la solicitud del permiso único 2023-513529-PU-311770 con variación en uso para la operación de un restaurante con ventas de bebidas alcohólicas al detal en el predio ubicado en un distrito R-B. En atención al derecho expuesto, concluimos que el PA no estaba facultado para expedir ministerialmente un permiso único con variación en uso en dicho distrito, **pues conlleva emplear criterios subjetivos**, **discrecionales**, lo cual le está expresamente vedado por la Ley Núm. 161-2009, *supra*, y por el Reglamento Conjunto, *supra*.

Ahora bien, en un intento de impugnar la determinación de la agencia recurrida de que el PA no estaba autorizado para emitir el permiso único con variación en uso ministerialmente, la parte recurrente acompaña el presente recurso con dos permisos que fueron expedidos previo al permiso único 2023-513529-PU-311770. Esto es, Los Hermanos incluye el permiso de uso comercial 2019-266071-PUS-063169 expedido el 12 de junio de 2019 por la OPU para la operación de un restaurante con ventas de bebidas alcohólicas al detal en el predio antes mencionado. Además, incorpora el Permiso Único *Condicionado* 2020-310303-PU-029092-C expedido el 13 de julio de 2020 bajo apercibimiento de que para concederle el Permiso Único *Final* debía cumplir con ciertas condiciones acordadas. Entre ellas, por ejemplo, se le requirió enmendar la Resolución 2017-00991-VUC **para incluir y solicitar la legalización de las obras ya construidas sin el permiso correspondiente e incluir las demás obras**

**propuestas para la ampliación de las facilidades del negocio y/o usos adicionales.** Del expediente ante nos no surge acreditación alguna del cumplimiento con la referida condición.

No tan solo ello, sino que, cabe enfatizar, a la contención de la parte recurrente sobre que el uso solicitado fue autorizado previamente se le opone la siguiente determinación de la agencia recurrida:

> [D]urante la vista de revisión se mencionó que la solicitud era ministerial debido a que existían permiso de uso previos emitidos a la propiedad. No obstante, **no surge de la evidencia del expediente del caso, ni en la información provista en el memorial explicativo, que para la propiedad existieran permisos de uso o permisos únicos previos.**

A tenor con el derecho expuesto anteriormente, se presume la corrección de la referida determinación de la agencia recurrida y la parte recurrente no ha logrado rebatirla con evidencia sustancial que surja del expediente. Esto, unido a que del propio Permiso Único 2023-513529-PU-311770 surge que es uno *nuevo*,[5] nos lleva a avalar la conclusión de que el PA estaba impedido de emitir el permiso único objeto de revisión. En otras palabras, a pesar de que el PA emitió un permiso único *nuevo* con variación en uso sin que se acreditara la existencia de los permisos previos, ahora la parte recurrente trae dos de ellos por primera vez ante este foro revisor. Tal actuar no lo podemos admitir por cuanto, como foro apelativo estamos impedidos de considerar asuntos o de evaluar prueba que no desfiló ante el foro juzgador, en este caso la DRA OGPe. Así pues, el traer por primera vez ante este foro dos permisos previos al 2023-513529-PU-311770 no derrota la presunción de corrección de la determinación administrativa de que no se acreditó la existencia de estos, por lo cual el permiso en controversia no era permitido ministerialmente.

---

[5] Véase el Anejo 5 del Apéndice del recurso, pág. 22, particularmente la sección donde indica "Tipo de Permiso Único: **Nuevo**" *vis a vis*, el Anejo 3 del Apéndice del recurso, pág. 13, sección que dispone "Tipo de Permiso Único: **Renovación**" del permiso 2020-310303-PU-029092-C, que fue expedido para dar cumplimiento a las disposiciones de la Ley 161-2009, *supra*, sobre el Permiso Único para continuar sus operaciones.

A pesar de que lo anterior es suficiente para disponer del primer error planteado, entendemos meritorio puntualizar que tampoco le asiste la razón a Los Hermanos sobre su alegación de que "una vez concluyó en el año 2018 el caso que contenía la solicitud y decidió sobre la variación de uso y emitiéndose el correspondiente permiso de uso inicial, cualquier asunto relacionado con la variación quedó adjudicado". Primero, porque dicho argumento hace completa abstracción de que el Artículo 9.6 de la Ley Núm. 161-2009, *supra*, dispone que en ningún caso se requerirá la expedición de un nuevo permiso, **siempre y cuando el uso autorizado, permitido o no conforme legal, continúe siendo de la misma naturaleza**. Segundo, porque el Artículo 8.4a de la Ley Núm. 161-2009, *supra*, exige que todo edificio existente o nuevo, con usos no residenciales, así como todo negocio nuevo o existente, obtenga un Permiso Único para continuar sus operaciones. Más adelante, el referido artículo establece que previo a la renovación de un Permiso Único, la Oficina de Gerencia de Permisos, Profesional Autorizado o el Municipio Autónomo con Jerarquía de la I a V, según aplique, **realice una inspección para garantizar que la actividad está cumpliendo con los requerimientos estatutarios y reglamentarios**. Entonces, por virtud del Artículo 8.4a de la Ley Núm. 161-2009, *supra*, Los Hermanos debía obtener el Permiso Único para continuar sus operaciones. Según surge del expediente ante nos, la recurrente solicitó la conversión del permiso de uso 2019-266071-PUS-063169 a un permiso único bajo el número de tramite 2020-310303-PU-029092-C. Cónsono, entre las condiciones del Permiso Único *Condicionado* 2020-310303-PU-029092-C, se encuentra el legalizar las obras ya construidas sin el permiso correspondiente e integrar las demás obras propuestas para la ampliación de las facilidades del negocio y/o usos adicionales. Del expediente ante nos no surge acreditación alguna ante la agencia recurrida de que se haya cumplido con la condición para

obtener el Permiso Único *Final* de manera que nos permita concluir que el permiso 2023-513529-PU-311770 otorgado posteriormente es permitido ministerialmente. Por lo tanto, no podemos pasar por alto la pretensión de que una vez se concede una variación en uso, todo asunto relacionado a esta queda adjudicado a perpetuidad. En definitiva, el primer error tampoco fue cometido y sostenemos la determinación de la agencia recurrida.

No habiéndose cometido ninguno de los errores señalados por Los Hermanos, procede *confirmar* el dictamen recurrido.

## IV. Parte dispositiva

Por los fundamentos que anteceden, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones